Stevens vs. Breen.

---

Stevens, Respondent, vs. Breen, Appellant.

*January 11 — January 28, 1890.*

*(1, 2) Debtor and creditor: Preferences: Evidence of fraud: Chattel mortgages: Delay in taking possession. (4) Consent to immediate sale. (3) Special verdict: Finding of value of property converted.*

1. Where no assignment for the benefit of creditors is made or contemplated, and there is no fraudulent intent, a debtor may mortgage his property to secure a *bona fide* indebtedness to one creditor, in preference to others; and the mere fact that the creditor secured is his father-in-law raises no presumption of fraud.
2. A mortgage of a stock of goods was given on Friday to secure a debt due on Saturday. The mortgagor remained in possession until Monday, and continued to sell goods and apply the proceeds to his own use, but there was no agreement that he should do so, and the delay of the mortgagee in taking possession was satisfactorily explained. *Held,* that these facts did not render the mortgage fraudulent as to other creditors.
3. In an action by the mortgagee for the conversion of mortgaged goods taken from his possession under attachments in favor of other creditors, the value of the goods so taken need not be found in the special verdict, where it is undisputed that it largely exceeds the plaintiff's claim.
4. A mortgagee of chattels may waive the benefit of ch. 294, Laws of 1887, by consenting to an immediate sale of the property.

APPEAL from the Circuit Court for *Ashland* County.

Action for the conversion of personal property. The principal facts are stated in the opinion. The jury returned a special verdict to the effect (1) that on October 5, 1888, there was due from John A. Cook to the plaintiff $2,199;

| | |
|---|---|
| 75 | 595 |
| 77 | 206 |
| 75 | 595 |
| 79 | 249 |
| 75 | 595 |
| 81 | 259 |
| 81 | 571 |
| 75 | 595 |
| 88 | 596 |
| 75 | 595 |
| 93 | 110 |
| 75 | 595 |
| 106 | 83 |
| 75 | 595 |
| 107 | 118 |

(2, 4) that on that day Cook executed and delivered to the plaintiff a chattel mortgage of the goods described in the complaint for $2,199, which mortgage was duly filed on the same day; (3) that $227.43 has been paid on the mortgage; (5) that the plaintiff took possession of the goods on October 8, 1888; (6) that on October 13, 1888, the defendant, as sheriff, took said goods from the possession of the plaintiff on the writs of attachment described in the answer; (7) that from 4 o'clock P. M. on Friday, October 5, 1888, until the next Monday morning, Cook continued in possession of the goods, selling the same in his own name, carrying on the business, applying the proceeds to his personal and family use, without accounting for sales to the plaintiff; (8) that the plaintiff was aware that Cook was so conducting the business, but (9) that there was no understanding or agreement between them that Cook should do so.

The court denied the defendant's request to submit to the jury the following questions: 1. Did the plaintiff, upon taking possession of the goods, immediately commence selling the same at retail at private sale? 2. If you answer "yes" to the last question, was such private sale with the knowledge of Cook? 3. Did Cook and the plaintiff intend, by the execution and delivery of the chattel mortgage, to hinder and delay any of Cook's creditors in collecting their claims? 4. What was the value of the goods taken from the plaintiff by the defendant?

Judgment was entered on the special verdict for the plaintiff for $2,044.33 and costs. The defendant appeals.

For the appellant there was a brief by *Mead & Dixon*, and oral argument by *A. E. Dixon*. To the points that the requisites of a special verdict are the same under the Code as at common law, that it must contain all the facts necessary to sustain the judgment, and that it cannot be aided by the evidence or by extrinsic matter, they cited

*Williams v. Willis,* 7 Abb. Pr. 90; *Casey v. Dwyre,* 15 Hun, 153; *Wallingford v. Dunlap,* 14 Pa. St. 31; *Comm. v. Grimes,* 116 id. 450; *Pint v. Bauer,* 31 Minn. 4; *Cotzhausen v. Simon,* 47 Wis. 103; *Buchanan v. Milligan,* 108 Ind. 433; *Eisemann v. Swan,* 6 Bosw. 668; *Sisson v. Barrett,* 2 N. Y. 406; *Hill v. Covell,* 1 id. 522; *Langley v. Warner,* 3 id. 327; *Seward v. Jackson,* 8 Cow. 406; *Pittsburgh, C. & St. L. R. Co. v. Spencer,* 98 Ind. 186; *Jones v. Baird,* 76 id. 164; *Henderson v. Dickey,* id. 264; *Stropes v. Board,* 72 id. 42; *La Frombois v. Jackson,* 8 Cow. 589; *Barnes v. Williams,* 11 Wheat. 415; *Bolling v. Mayor,* 3 Rand. 577; *Lee v. Campbell's Heirs,* 4 Porter (Ala.), 198; *Brown v. Ralston,* 4 Rand. 516.

*Gerrit T. Thorn,* of counsel, for the respondent.

Cole, C. J.  To our minds, this case presents no question of doubt or difficulty.  The plaintiff brought the suit to recover the value of a stock of boots and shoes, etc., which had been wrongfully taken from his possession by the defendant, and converted by the latter to his use.  The plaintiff was in possession of these goods under a chattel mortgage given by one John A. Cook, dated October 5, 1888.  The defendant admitted in his answer the execution and delivery of the chattel mortgage by Cook to the plaintiff, and that the plaintiff took possession of the goods therein described, but further alleged that the mortgage was fraudulent and void as to creditors of the mortgagor, and that the defendant took possession by virtue of certain writs of attachment mentioned, issued against the property of such mortgagor in favor of his creditors.

The evidence in the case is perfectly overwhelming and conclusive that the mortgage was made in good faith, and to secure an actual indebtedness of $2,199 due the plaintiff from Cook; and the jury, in answer to the question submitted, so found.  We do not perceive any fact or circumstance

in the transaction which in any way impeaches the entire good faith of the parties in giving this mortgage. It is true, it appears that the plaintiff was the father-in-law of Cook. But, as plaintiff's counsel well observes, that fact alone raises no presumption that the mortgage was given with fraudulent intent or to subserve any unlawful purpose. There was certainly a full and valuable consideration proven for the mortgage, and, as we have said, we discover no fact in the testimony which tends in the least to impeach its fairness.

It is said the trial court refused to submit the question whether or not the mortgage was executed with fraudulent intent to the jury. But the court did so, doubtless, for the very good reason that no evidence had been introduced which would have warranted a jury in finding that it was given with any such fraudulent intent. There should be some competent testimony bearing upon such an issue; otherwise, it is idle to submit it to the consideration of the jury. It surely cannot be seriously claimed that a jury should inquire as to a matter of fact, if no evidence has been given in regard to it. A jury finds facts from the proofs introduced on the trial, not from mere conjecture or surmise.

Of course, the consequence of giving the mortgage was to lessen the means of the debtor to pay other debts, but this result must always follow where the debtor pays, or secures the payment of, the debt of one creditor without paying all the others. The debtor's ability to pay is *pro tanto* diminished; but this court has not held, nor is such the law, that a debtor cannot pay or secure an actual indebtedness of one creditor, providing the transaction is in good faith, because the effect may be to hinder or delay other creditors in collecting their debts. A debtor may mortgage his property for the purpose of securing one creditor, where there is no dishonest intent in the matter,

and there is an actual *bona fide* indebtedness due to such creditor. We have no reference to a transfer or mortgage which possibly may be voided under the assignment act of 1883 forbidding preferences. Here there was no assignment made or contemplated, but the debtor saw fit to secure the debt of one creditor in preference to another; and this may be done where there is no fraudulent intent on the part of the parties to the transaction. *Anstedt v. Bentley*, 61 Wis. 629. So we hold, inasmuch as there was no evidence which tended to show a fraudulent intent in the execution of the mortgage, it was not error for the court below to refuse to submit that question to the jury.

It is claimed that the mortgage, even if given to secure a subsisting indebtedness due the plaintiff, was fraudulent because he did not take immediate possession of the mortgaged stock. The mortgage was executed on the 5th of October, 1888; and the debt became due the next day, which was Saturday. It appears that the mortgagor continued in possession of the goods until the next Monday morning. It is said he continued to sell goods from the stock, and applied the proceeds to his own use, and that the case is within *Anderson v. Patterson*, 64 Wis. 557. The fact that he made such sales, and did not account for them, is not very clearly established. Suppose he did. The jury found that there was no understanding or agreement between the plaintiff and the mortgagor that the latter should remain in possession of the goods, make sales, and apply the proceeds to his own use. There is certainly no testimony that there was any such understanding or agreement. The plaintiff explains why he did not take possession of the stock Saturday, as he might have done under the mortgage. The explanation is satisfactory, and repels all presumption of fraud arising from the short delay. The delay was surely not unreasonable, in view of the facts of the case. *Richardson v. End*, 43 Wis. 316.

Another objection is that the jury did not find the value of the goods taken by the defendant on the writs of attachment. The jury, however, did find the amount of the plaintiff's debt; and the undisputed evidence shows that this debt was less than the value of the goods taken. The defendant's own inventory showed that the goods exceeded in value, by several hundred dollars, the amount of the plaintiff's claim; and the plaintiff recovered only to the extent of his lien. Ordinarily, the value of the property taken is found by the jury. It would, doubtless, have been so found in this case, had it not been shown, beyond all cavil or dispute, that the value of the goods taken considerably exceeded the plaintiff's claim. Under the circumstances, we can see no necessity for submitting the question, or for the jury finding the value of the goods. The defendant had them in his possession, and had the right to hold them for the creditors of Cook, subject to the plaintiff's lien.

As soon as the plaintiff took possession under his mortgage, he commenced selling off the stock at private sale. It is said that he had no right to do this, because it was in violation of provisions of ch. 294, Laws of 1887. That act does, in effect, provide that there shall be no sale of any personal property taken by virtue of a chattel mortgage, *except by the consent of the mortgagor*, before the expiration of five days from the time when the property was actually taken. But in this case, on the day the possession was taken, the mortgagor consented in writing that the mortgagee might sell and dispose of the mortgaged " property at public or private sale at once, without putting up any notices, or delaying the sale of said property for five days or any length of time." This removes all objection to the sales made by the mortgagee. The statute was doubtless intended to protect the mortgagor against any immediate sale without a particular notice thereof, and to give him

five days' further time to redeem his property; but the debtor may waive the benefit of the statute, if he sees fit to do so, by consenting to an immediate sale.

We see no error in the case, and think the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.