## FIRST NATIONAL BANK V. NORTH.

1.  Appellant, as sheriff, attached a stock of goods which he found in the peaceable possession of respondent. Respondent brought action against appellant for such taking, alleging in its complaint such prior peaceable possession, and that the taking by appellant was wrongful; and further alleging that it had taken such possession by virtue of a chattel mortgage executed to it by the then owners of the goods, who were the attachment debtors. *Held*, that such complaint stated a cause of action as against an attaching creditor, without affirmatively showing any default in the mortgage which would entitle the mortgagee to so take possession.

2.  In such case the justifiableness of the possession was a matter between the mortgagor and mortgagee, and an attaching creditor could not prevent the restoration of the goods to respondent by showing an unasserted right to possession in the mortgagor.

3.  The chattel mortgage ran to "The First National Bank." *Held*, there was no error in allowing parol evidence to show that "The First National Bank of Canton" was the mortgagee.

4.  Where a tender of evidence is made to prove certain facts, some of which are admissible and others inadmissible; the offer is properly rejected as a whole.

5.  To entitle one to recover damages for false representations, it must appear not only that he believed them to be true, but that he acted upon the faith of such representations, and that injury resulted.

6.  Fraud cannot be predicated upon any disposition a debtor may make of his exempt goods, for they are not the subject of fraudulent transfer. As respects creditors, they are not assets.

8.  The law of this state allowing a debtor to prefer creditors, an agreement that such debtor shall execute a chattel mortgage upon his entire stock of goods, but reserving the right to withdraw a certain amount of such goods to be turned over to another creditor in payment of a claim conceded to be just, is not fraudulent as against other creditors, and a chattel mortgage executed and delivered under such an agreement is not thereby rendered fraudulent.

8.  Section 4659, Comp. Laws, which makes the question of fraudulent intent in certain cases a question of fact, and not of law, does not interfere with the prerogative of the court to direct a verdict where the evidence is in such condition that the court would be bound to set any other verdict aside.

(Syllabus by the court.     Opinion filed February 3, 1892.)

Appeal from circuit court, Lincoln county.   Hon. E. G. SMITH, Judge.

Action to recover possession of a stock of goods under a

chattel mortgage.    Judgment for plaintiff.    Defendant appeals. Affirmed.

The facts are fully stated in the opinion.

*C. B. Kennedy,* for appellant.

If it specifically appears that the plaintiff was the owner and in possession of the property, or entitled to possession, allegation of possession is unnecessary.    Gare v. Wayland, 31 N. W. 108; Bank v. Farmer, 40 N. W. 345.    The debt for which the mortgage was given was past due and the presumption of law would be that it had been paid.    Marcuns v. Coleman, 19 Pac. 394.    Where one of two innocent persons must suffer by an act of a third, he must suffer who puts it in the power of the third to do the act.    Condrey v. Vandenburg, 101 U. S. 572; Wood's Appeal, 92 Pa. St. 390; Hamlin v. Sears, 82 N. Y. 327; Crocker v. Crocker, 31 N. Y. 510.    Admissions and declarations of fraud by the vendor are admissible against the vendee.    Jones v. Simpson, 6 Sup. Ct. Rep. 538.

When the evidence is in conflict it is error to direct a verdict.    Commissioners v. Clark, 94 U. S. 284; Star Wagon Co. v. Mathiessen, 11 N. W. 107; Langley v. Daly, 1 S. D. 257; Peet v. Ins. Co., 1 Id. 402; Marshal v. Harney, 1 S. D. 350; Randall v. Railroad, 109 U. S. 482.

A mortgage given by a debtor covering all his property is a badge of fraud and in some states raises a conclusive presumption of fraud.    Bump on Fraud. Con. 31; Farwell v. Stinerod, 46 N. W. 922; Brown v. Vork, 47 N. W. 192.    One who undertakes to secure a debt due himself is guilty of fraud if he has an additional purpose to enable his mortgagor to defraud his creditors and in such case the mortgage is void.    Leigh v. Reitz, 25 Ill. App. 615; Klem v. Hoffheiner, 132 U. S. 367; Newell v. Wagness, 44 N. W. 1014; Rinkeer v. Aird, 6 Wall. 78; Bank v. Com., 28 N. W. 855; Jaffrey v. McGeehee, 107 U. S. 361.    Actual fraud is always a question of fact.    § 3509 Comp. Laws; Fisk v. McDonald, 44 N. W. 535.

*R. B. Tripp (Bartlett Tripp of Counsel)* for respondent.

An allegation of bare possession, as against a trespasser, is

sufficient.     1 Abb. Forms 508;  Everett v. Buchanan, 2 Dak. 252; Tuthill v. Skidmore, 26 N. E. 350.   It was necessary for the officer to show that the writ was regularly issued.   Keyes v. Gramus, 3 Nev. 550.   An oath should not be administered by a notary public who is attorney for the plaintiff.     1 Wait's Pr. 256; Wade Att. § 60; § 468, C. C. Pro.; § 487 Comp. Laws; Greenrault v. Bank, 2 Doug. 498;  Toole v. Smith, 7 Pac. 577; Schoen v. Sunderland, 18 Pac. 914; Warner v. Warner, 11 Kan. 121.    The affidavit should be made at the time of the application for the writ.   Waples Att. 79; Drew v. Dequindre, 2 Doug. 93; Wilson v. Arnold, 5 Mich. 98; Fessenden v. Hill, 6 Mich. 242. The title acquired by plaintiff by the surrender under the mortgage, valid as between the parties thereto, is superior to that obtained by the subsequent attachment.   Hanselt v. Harrison, 105 U. S. 405; Cameron v. Marvin, 26 Kan. 612;  Applewhite v. Harrold, 5 S. W. 293; Read v. Wilson, 22 Ill. 376; Petring v. Reer, 3 S. W. 405; Dobyns v. Meyer, 8 Id. 251.

The note and mortgage should be construed together. Darrow v. Schullen. 19 Kan. 59; Muzzy v. Knight, 8 Kan. 456; Boone Cor. § 30.    Even if there had been prior fraudulent mortgages, that would not effect this mortgage.    Johnson v. Stillivagen, 34 N. W. 253. The law never imputes a bad motive to a lawful act.   Covan-Loren v. Hart, 21 Pa. St. 495; Eureka v. Bresnaham, 33 N. W. 840; The existence of a fair and valuable consideration is inconsistent with the existence of a fraudulent intent.    Jewett v. Noteware, 30 Hun. 192; Jefferson v. Ebom. 4 So. 386.

KELLAM, P. J.    The respondent bank, plaintiff below, brought this action against appellant, defendant below, to recover possession of a stock of goods, claiming the same under a chattel mortgage made to it thereon by M. B. Dean & Co., who it is conceded were the owners of the goods.   The mortgage was set out in the complaint.   Appellant was the sheriff of Lincoln county, and claimed to hold the goods under an attachment, and that respondent's mortgage was void for the reason that it could not be reasonably gathered therefrom who was the mortgagee therein, and that it was fraudulent and void

as against the attaching creditors, the answer alleging that at and for a long time prior to the giving of the said chattel mortgage the said Dean & Co. were insolvent; that they applied to and received from the respondent bank a loan of money, giving as security therefor a mortgage upon their said stock of goods, which by agreement between said bank and said Dean & Co. was to be and was kept from the records; that afterwards Farwell & Co., the attaching creditors herein, having made inquiry and found no incumbrance on said goods, and believing there was none, sold said Dean & Co. a large amount of goods on credit; that said note for money so borrowed of said respondent bank was from time to time renewed, but with the same agreement that the said chattle mortgage which secured the same should remain unrecorded; that afterwards, to-wit, October 22, 1885, the said indebtedness of said Dean & Co. to said bank then amounting to $1,800, the said bank, through its president, obtained from said Dean & Co. a renewal of their said chattel mortgage upon the said stock of goods, upon the agreement between them that, while the mortgage should in terms cover the entire stock, yet Dean & Co. should be allowed to withdraw therefrom goods to the amount of $1,500 or $2,000, and also about $900 worth which they were to turr over to one Frank M. Dean, which said goods were afterwards, with the knowledge and consent of said respondent bank, so taken and withdrawn from said stock.

At the commencement of the trial appellant objected to the introduction of any evidence under the complaint, for the reason that it did not state facts sufficient to constitute a cause of action, and the overruling of this objection is the first error assigned. The objection was based upon the fact, as appears by argument of counsel, that the complaint, while pleading the chattel mortgage as the source of respondent's possession, did not allege default in any of its conditions which would explain or justify such possession. The complaint alleges that, on and prior to November 9th, respondent was in and entitled to the possession of the goods in controversy. Appellant concedes that if respondent had stopped with that allegation, relying upon

his bare possession and its invasion, a cause of action would have been stated; but insists that when he goes further, and shows that his right of possession is derived from and depends upon his chattel mortgage, he must plead the conditions, in connection with the mortgage, which entitle him to such possession. The objection, for the purpose of its disposition, admits the facts that respondent was in possession of the goods, and that appellant took them away unlawfully. It is true that respondent exhibits its mortgage as the basis of its possession and right of possession, and if, under the terms of said mortgage, respondent could not possibly have been rightfully in possession, there would perhaps be force in appellant's claim. The mortgage shows that the indebtedness it was made to secure matured October 24th, and, if unpaid after that date, respondent might take possession of the goods and foreclose its mortgage. The complaint further alleges that prior to the 9th day of November—how long is not stated—it had so taken possession, and while so in possession appellant unlawfully, and without consent of respondent, took the goods from its possession. No more in this case than generally is the respondent required in the first instance to justify its possession. As against appellant, it does not base its right to recover the goods upon broken conditions in the mortgage, but upon the fact that appellant found them in the peaceable possession of respondent, and took them away unlawfully. The case is not like that of Bank v. Farmer, 5 Dak. 282, 40 N. W. Rep. 345. There the plaintiff bank never had possession, but sought to compel Farmer, who was in possession, to surrender the property claimed by the bank, and, of course, was required to affirmatively show some facts or conditions that would justify the court in aggressively taking the possession from Farmer, and giving it to the bank. The court found Farmer in peaceable possession of the property, and only asserted the common learning of all the books in holding his possession was good against everybody but one showing a better right. This the plaintiff bank in that case did not do. It neither showed the conditions of the mortgage, nor that any of its conditions had been broken, and so

exhibited no reason for the interferance of the court in taking the possession from Farmer and giving it to the plaintiff bank; but here the court finds respondent first in possession. That fact is distinctly alleged. It is further indirectly alleged that such possession was by virtue of the mortgage, but we do not think this allegation made it necessary for respondent to go further, as against the attaching creditor, and show some default or broken condition in the mortgage which justified taking possession. The right or fact of respondent's possession was not antagonized by anything in the mortgage or in the complaint, and the fact of possession was sufficient against a wrongful taker, as appellant was alleged to be. The justifiableness of the possession under the mortgage was a matter between the mortgagor and mortgagee. Otherwise an attaching creditor, as in this case, could make use of a defense in which he could have no interest. Respondent's possession might have been unjustifiable as against the mortgagor, but, if submitted to by him, the attaching creditor had no cause of complaint. The complaint charges that respondent was in rightful possession of the goods, and that appellant took them away unlawfully and as a wrong doer. Under these conditions, appellant could not prevent their restoration, even by affirmatively showing an unasserted right of possession in the mortgagor or any other third person. We think the objection to the introduction of evidence on account of the insufficiency of the complaint was properly overruled.

Upon the trial plaintiff offered in evidence a chattel mortgage purporting to be from M. B. Dean & Co. to "The First National Bank," as the Exhibit A referred to in the complaint, and made a part thereof. Defendant objected on grounds which have already been considered, and for the further reason "that the mortgage on its face does not show that it is a mortgage to the plaintiff, as alleged in the complaint;" the particular defect being that the mortgagee therein named was "The First National Bank," and not "The First National Bank of Canton," which was the plaintiff. This objection being stated, the plaintiff asked, and the court allowed, that it might make

proof that The First National Bank named in the mortgage was the plaintiff in this action. The allowance of such evidence, and the subsequent admission of the mortgage, are assigned as error. The exhibit offered was plainly indorsed: "Chattel Mortgage. M. D. Bean & Co. to First National Bank of Canton, Dak." This indorsement or memorandum was a part of the exhibit. The offer was of the whole of it. It was not limited to what appeared upon its face, or to so much of it as constituted the alleged mortgage. This indorsement was probably sufficient to explain any doubt appearing upon the face of the instrument as to who was intended by "The First National Bank;" but, if not, we entertain no doubt of the competency of parol testimony to explain such doubt and identify the mortgagee. It would be a plain case of the use of parol evidence to explain an ambiguity in a written instrument, and has been frequently resorted to to establish the identy of a corporation misnamed in a contract. In President v. Meyers, 6 Serg. & R. 12, Gibson, J., says: "I take the law of the present day to be that a departure from the strict style of the corporation will not avoid its contracts, if it substantially appear that the particular corporation was intended, and that a latent ambiguity may, under proper averments, be explained by parol evidence in this as in other cases, to show the intention." See, also, 2 Kent, Comm. 292; Distilling Co. v. Brant, 69 Ill. 658; Cotton Manufactory v. Adams, 10 Mass. 360; Ang. & A. Corp. (10th Ed,) § 234.

The sixth assignment is "that the court erred in not permitting the defendant to show that prior mortgages had been made and held by the plaintiff on this same stock of goods, and that the mortgage in question was a continuation of a systamatic scheme to defraud creditors." This and the eighth, ninth, and tenth assignments must be considered together, as there was no ruling of the trial court upon the subject of the sixth, except in connection with the subject of the others. Together they present the question of error in rejecting defendant's offer of testimony, appearing in appellant's abstract, of which an extract is given hereinafter. It may be proper to observe,

however, that the language of the sixth assignment is much broader than is justified by the rejected offer. There was no offer to prove that "the mortgage in question was a continuation of a systematic scheme to defraud creditors." The ruling of the court upon which all of these assignments are based appears in the abstract as follows: "M. B. Dean recalled: Question. Mr. Dean, you may state to the jury whether or not, prior to giving the mortgage in question, you had given any other mortgage on the same stock of goods for which this was a renewal. (Objected to as being improper in form, asking for the conclusion of the witness, irrelevant to the issues in the case, and incompetent. Note. This offer is in the identical words of the answer, commencing with the word 'that,' in the last line on page 7, and ending with the word 'concealed,' in line 4 on page 10, of this abstract; and in addition thereto the following: And that the said mortgage was again renewed, and under the same arrangements that it should not be filed of record, with the additional conditions that M. B. Dean & Co. should take out at least $1,500 to $2,000, which they should claim for themselves as exemptions, and $837, which they owed to F. M. Dean, and the mortgage should be held as a cloak to defraud creditors. Objection sustained, and exception taken.")

We will assume, as the meaning of the abstract, that at that point in the trial respondent offered to prove the several matters and things alleged in so much of his answer as was indicated in the "note," together with the additional offer as to renewing former mortgages, and the taking out of the mortgagor's exemptions and goods with which to pay their indebtedness to F. M. Dean. We think the court was justified in rejecting this offer, on the ground that, of the many things included in it and proposed to be proved, a part of them, at least, were immaterial and inadmissible. The rule is thus stated in Thompson on Trials, § 678: "Where a tender of evidence is made to prove certain facts, some of which are admissible and others inadmissible, the offer is properly rejected as a whole;" but as this ruling seems to be an important one in the case, we

examine it further.    The facts offered to be proved, gathering them from that part of the answer referred to in the offer, would be that, for a long time prior to the giving of the particular mortgage under consideration, the bank had held other mortgages on this stock for this same indebtedness, which by agreement with the Deans, and for the purpose of saving their credit, had been kept from record; that Farwell, finding no incumbrance of record, and believing there was none, gave credit to Dean; that afterwards, finding Dean's creditors were becoming uneasy, the bank took a new mortgage for its indebtedness, then amounting to $1,800, with the greement with the Deans that, while the mortgage should cover the entire stock, they would be allowed to withdraw therefrom their exemptions, and also about $900 worth of goods with which to pay an indebtedness of that amount to Frank Dean.    The withholding of these mortgages from the record was a matter of which Farwell could not complain until he showed that he was injured thereby.    Keeping these mortgages from the record might have been designed to give the Deans a fictitious credit, and thus work a wrong to creditors, but Farwell was not in position to prove it until he showed himself a sufferer from such fraud. The fraud which the law recognizes and undertakes to provide against is not a bad intent or mischievous design, but the execution of such intent or design to somebody's detriment.    Appellant offered to show that Farwell was ignorant of the existence of this mortgage when he gave the credit to Dean & Co., but this would be immaterial without the further fact that he was induced to extend the credit by his belief that there was no mortgage.    For aught that appears in the offer, he would have sold the goods and given the credit if he had known of the mortgage.    The offer conspicuously omitted one of the essential elements of fraud in such cases, towit, that the false representation was acted upon, resulting in damage.    To make the act of concealment fraudulent, it must have at least partially induced the result which caused damage.    Farwell might have sold the goods to Dean & Co., "believing" there was no mortgage, and yet such belief might not have been at all influ-

ential with him in making the sale or giving the credit. To act upon false representation in reliance upon its truthfulness is a necessary fact to be shown by one charging damaging fraud. Cooley, Torts, 502.

Lefler v. Field, 52 N. Y. 621, was an action for the price of barley. Defendant answered that the barley was bought by his agents; that plaintiff represented it good, first quality, and merchantable; that the agent relied upon such representation; that the barley was not merchantable, and that plaintiff knew it. The court of appeals held the answer worthless, since it omitted two essential elements of fraud: (1) Plaintiff's intent to deceive; and (2) that defendants were in fact deceived. In Slaughter v. Gerson, 13 Wall. 379, Mr. Justice FIELD, in speaking of the requisites of a misrepresentation to make it fraudulent, says: "It must be a representation upon which he [the complaining party] relied, and by which he was actually misled to his injury." In Taylor v. Guest, 58 N. Y. 262, the court says: "In a legal sense, a person is not damaged by a false representation by which he is not influenced. It is incumbent upon the party claiming to recover in an action for deceit, founded upon false representations, to show that he was influenced by them. * * * In all cases it is a fact which should be averred in the complaint, and must be maintained by evidence." In Van de Sande v. Hall, 13 How. Pr. 458, an answer was held bad because it omitted "to allege that the defendant was misled by the representation or that his belief in the truth of the representation induced him to enter into the lease." In Goings v. White, 33 Ind. 125, it is said that to make fraudulent representations actionable the complaint "must contain an averment that the plaintiff relied upon the representations. The want of such averment cannot be supplied by a recital of evidence which might justify a presumption that the representations were relied upon, unless such evidence be conclusive of the fact."

Another reason why the offer was properly rejected is this: The sole question to which the offered evidence could apply was, was this chattel mortgage fraudulent as to Farwell? The

honesty of Dean's indebtedness to the bank was not involved or questioned. That was admitted. The contention was as to the *bona fides* of the mortgage which secured it. The fact sought to be proved against the bank was not that it had concealed Dean's indebtedness to it, but that it had concealed its mortgage. If the offer had been to prove that the bank had fraudulently concealed from Farwell the facts of Dean's indebtedness to it, and had thus induced Farwell to sell them goods, a different question might be presented; but, for aught that appears in the offer, Farwell might have been fully informed as to the indebtedness, for he only alleges his ignorance of the mortgage, and his sole complaint is that that was concealed from him. Now, if he knew of the indebtedness,—and there is nothing in the offer to justify us in assuming that he did not,—he must have known that Dean, being indebted to the bank, could at any moment give it a mortgage, and so doing would put all parties in precisely the situation in which the commencement of this action found them, and that, too, without any appearance or evidence of fraud against anybody. Suppose we assume—and there is nothing either in the facts proved or offered to be proved inconsistent with such assumption—that during all this time Farwell was aware of Dean's indebtedness to the bank, but was ignorant that the bank was holding an unrecorded chattel mortgage against the stock, would there be anything in the evidence offered that would tend to destroy this mortgage, as fraudulent as to Farwell? We think not. As against Farwell or any other creditor the unrecorded mortgages were void. Not because they were withheld from record for the purpose of deception, but simply because they were not recorded. Farwell was bound to know that, if there was an honest indebtedness, an innocent chattel mortgage might follow at any time. So that the fact, the concealment of which might constitute a fraud against him, was the fact of the indebtedness; but there was no offer to prove any concealment of that fact. For these reasons we think the trial court was right in rejecting this offer.

Appellant's proposition also included an offer to show that

said mortgage was taken with the understanding that the mortgagors, Dean & Co., should be allowed to take out goods to the amount of their exemptions from the stock so mortgaged. Such an agreement, proved and executed, would constitute no legal wrong toward creditors. Dean & Co. might do as they pleased with their exempt property, and creditors could not complain. Story, Eq. § 367, and cases cited. The offer was also to show that the mortgage was given with an agreement that a certain amount of goods should be withdrawn and applied to the payment of an indebtedness of the mortgors to one Frank Dean. We see nothing fraudulent in this. It is not claimed but that such indebtedness was genuine, and the statute expressly gives the debtor the right to prefer one creditor to another. Section 4654, Comp. Laws. We think the offer was properly rejected by the trial court.

The seventh assignment is as follows: "The court erred in not permitting the defendant to show that at the time the goods were turned over to the plaintiff by M. B. Dean they were turned over for the protection of Dean & Co., and as a cloak to cover them up and protect them from the creditors of M. B. Dean & Co., and not to be subjected to the payment of the mortgage." It is difficut to tell against what particular ruling of the court this charge of error is directed. Its characteristic words are the last words of the rejected offer which we have just considered. and, though the error is charged in a separate assignment, we find no other ruling which the assignment will fit. An assignment should point out the particular ruling objected to. It is not sufficient to complain that evidence of a certain general character, or tending to prove a certain condition of things, was admitted or rejected. An appellate court will not hunt through the record to find a ruling which the assignment will fit. If the alleged error is based upon the rejection of the offer already considered, it is sufficient to say that, even if a separate offer to prove that the goods "were turned over for the protection of Dean & Co., and as a cloak to cover them up," should have been allowed, there was no error in rejecting it as a part of an entire offer, other parts of which

were objectionable. Thomp. Trials, § 678; Smith v. Bank, 104 Pa. St. 518. In the argument of this assignment appellant speaks of "about $2,000 worth of these goods" being moved into the Syndicate building, and says "that the tendency of the defendant's testimony was to show a conspiracy between Gale [president of respondent bank] and Dean, at the time the mortgage was made, to protect this stock of goods from the attachment of creditors, and that provision was made in the oral agreement that about $2,000 worth should be taken out, which should be removed to the Syndicate block, and there the Deans should sell them for their own benefit." Although appellant's brief repeatedly speaks of "about $2,000 worth of goods" as covered by this oral agreement, the testimony of Dean himself the only witness upon this point—is that they were to be allowed to remove "from $1,500 to $2,000 worth of goods out of there, we could hold under the exemption laws, and move them to the Syndicate block." He further testifies that the goods taken to the Syndicate block were to cover their exemptions, and that they "did not take out of the stock more than would cover our exemptions." This evidence was not disputed, so that we must treat the goods in the Syndicate block as the exempt goods of Dean & Co. The next day after these goods were separated from the stock in the Pattee building, and removed to the Syndicate block, the mortgagors, Dean & Co., turned them over to the respondent bank; and the error complained of in this assignment, if we understand it, is that appellant was not allowed to show that "they were turned over for the protection of Dean & Co., as a cloak to cover them up and protect them from the creditors of Dean & Co., and not to be applied to the payment of the mortgage." As we have already indicated, Dean & Co. might make any disposition they saw fit of their exempt goods, and no fraud could be predicated on such disposition, for they were not the subject of fraudulent transfer. As respects creditors, they were not assets. Bump, Fraud. Conv. (3d Ed.) 245, and numerous cases there cited. The abstract leaves this court quite in the dark as to what statements of Gale were excluded by the court, or what appellant desired to prove by him, ex-

cept as indicated generally by the assignment; yet we are unable to conceive how any statement he might then make, as to why he wanted these exempt goods turned over to his bank, could have tended to prove the legal *mala fides* of the chattel mortgage.

The only remaining assignment argued by appellant is that the court erred in directing a verdict for the plaintiff, and the following reasons are specified, which we notice *seriatim:* (1) "The mortgage on its face shows that it is a blanket, covering all the property of M. B. Dean & Co. of value of $4,300." The mortgage as it appears in appellant's abstract, is an ordinary chattel mortgage upon a stock of goods, with nothing to indicate their value, or that it covered all the property of Dean & Co. (2) M. B. Dean swears that the mortgage was made in form to cover all the goods as a cloak, when in fact it should only cover what was left in the Pattee block after two thousand dollars' worth was taken out for the use of Dean & Co., and eight hundred and thirty-seven dollars' worth for the use of F. M. Dean." This is not M. B. Dean's testimony, as we read it in the abstract. Read in the light of his evidence, as we have already seen, the reason should be stated thus: M. B. Dean swears that the mortgage was made in form to cover all the goods as a cloak, when in fact it should only cover what was left in the Pattee block after they had taken out their exemptions, and also paid from them their indebtedness to F. M. Dean, amounting to $837. As we have attempted to show, such an agreement would not make the mortgage fraudulent. (3) "That the mortgage should not be recorded until divisions were made." The divisions referred to were the taking out of their exemptions, and the payment from their goods of their indebtedness to F. M. Dean, both of which they had a right to do, and of the doing of which Farwell could not complain, and we do not see how a few hours' delay in recording the mortgage, or an agreement that it should be so delayed, could have affected Farwell's rights or interests, his relations to the Deans or their property not being changed in the mean time. (4) "That it was agreed

that the mortgage should be used as a cloak to protect the property reserved to Dean & Co. from their creditors, and possession of the goods was turned over to the plaintiff, not to satisfy the mortgage, but that the mortgage might be used to protect them from creditors." This ground we have already examined at length. (5) "That the whole evidence shows that there was a secret trust reserved to the use of Dean & Co." As to this we have no opinion, as the abstract does not assume to present the whole evidence, but what is returned we have carefully examined and it does not so impress us. Finally, it is insisted by appellant that as under Section 4659, Comp. Laws, the question of fraudulent intent is one of fact, the case should have been submitted to the jury. What ever meaning the courts may give to this section,—and their constructions have not been entirely uniform,—it cannot be taken to mean that every case in which the question of intent is presented in the pleadings must go to the jury, without regard to the condition of the evidence. So far as we can discover, the only fact relied upon by appellant to show the fraudulent character of this mortgage, aside from those which we have noticed at length, is that the mortgage was given upon $4,300 worth of goods to secure an indebtedness of only $1,800. We doubt whether, in this jurisdiction, this fact alone—the margin between the debt and the security—would in any case constitute a badge of fraud. Section 4658, Comp. Laws, provides that "a creditor can avoid the act or obligation of his debtor for fraud only where the fraud obstructs the enforcement by legal process of his right to take the property affected by the transfer or obligation," and sections 4388 and 4389 definitely declare that the creditor may enforce his right notwithstanding the mortgage, and provide how it may be done. There is reason for a contrary rule where a chattel mortgage transfers the property to the mortgagee, and so protects it from the direct reach of other creditors; but, where the mortgage is only a lien, we think the language of the court in Downs v. Kissam, 10 How. 102, is applicable: "It is no badge of fraud for a mortgage, which is a mere security, to cover more property than will secure the debt due. Any

creditor may pay the mortgage debt and proceed against the property.'' The section of the statute already referred to, which makes the question of intent one of fact and not of law does not interfere with the prerogative of the court to direct a verdict where the evidence is in such condition, with reference to its probative force, that the court would be bound to set aside any other verdict. This section was taken from New York, and such is the effect there given it. Bulger v. Rosa, 119 N. Y. 459, 24 N. E. Rep. 853. Such is also declared to be the proper construction and effect of a similar statute of Michigan, in Bank v. Bates, 120 U. S. 561, 7 Sup. Ct. Rep. 679, where the court says: ''The good faith of such transactions, where they are not void upon their face, is, under the statutes of Michigan, a question of fact for the determination of the jury. That rule does not, however, restrict the power of the court to give to the jury a peremptory instruction, covering such an issue, when the evidence is all on one side, or so overwhelmingly on one side as to leave no room to doubt what the fact is. See, also, as fully sustaining this view, Stevens v. Breen, 75 Wis. 598, 44 N. W. Rep. 645. After a careful examination of this record, and of the errors assigned and ably and earnestly argued, we see no good reason for disturbing the judgment of the trial court, and the judgment is affirmed. All the judges concurring.