PECOS VALLEY BANK v. EVANS–SNIDER–BUEL CO.

(Circuit Court of Appeals, Fifth Circuit. March 19, 1901.)

No. 1,016.

1. CHATTEL MORTGAGES—PARTIAL RELEASE—DISPOSAL OF RELEASED PROPERTY—EFFECT OF RENEWAL MORTGAGE.
  If, before the execution of a second renewal chattel mortgage on the same property, included in the first between the same parties, the parties agreed by parol that the mortgagor might dispose of a part of the mortgaged property free from the mortgage liens, and he did so, the rights thereby acquired by third parties to such released property are unaffected by the renewal mortgage.

2. SAME—PROVISIONS—ANNULMENT OR MODIFICATION BY PAROL.
  Provisions of a chattel mortgage of sheep that their wool may be shorn and marketed by mortgagor, with the written consent of mortgagee, and the proceeds applied to the mortgage debt, and that mortgagee may seize or recover the wool, or the proceeds thereof, to apply on the debt and for other mortgage purposes. may be annulled or modified by a parol agreement between the parties.

3. SAME—EVIDENCE.
  Parol evidence of an agreement to annul or modify provisions of a chattel mortgage is not inadmissible because it shows that a pencil memorandum thereof was made by one of the parties, and read by the witness testifying thereto, and which would have been admissible to support such parol evidence if produced and offered for that purpose.

4. SECONDARY EVIDENCE—MEMORANDUM—NOTICE TO PARTIES—NECESSITY.
  Notice to produce a memorandum, as a condition precedent to parol evidence of its contents, was not required, where the party who was claimed to have made it and to have had it in his possession had already testified that it never existed.

5. CHATTEL MORTGAGE—PARTIAL RELEASE—PAROL AGREEMENT—EVIDENCE—QUESTIONS FOR JURY.
  Though, on an issue as to whether prior to the execution of a chattel mortgage in renewal of a prior mortgage the parties agreed by a parol agreement to release from the lien of the first mortgage a portion of the property covered thereby, the renewal mortgage and a pencil memorandum of the parol agreement claimed to have been made by one of the parties at the time are admissible to support or contradict the agreement, the inferences deducible from the difference in the language of the two mortgages, and whether any memorandum was ever written, and, if written, what it contained, were questions for the consideration of the jury.

  Shelby, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Texas.

On March 25, 1898, J. C. King and W. N. Fowler, composing the firm of King & Fowler, executed and delivered to Evans-Snider-Buel Company, the defendant in error, a chattel mortgage conveying to H. M. Pollard, trustee, 18,400 head of sheep described in the mortgage, including the wool and fleece thereof when shorn, provided the same may be shorn by the mortgagors, and the wool marketed, with the consent of Evans-Snider-Buel Company in writing; the proceeds of the wool to be applied on the indebtedness described in the mortgage, and the mortgagee to have the right to seize or recover the wool, or the proceeds thereof, for the purpose of applying the same upon the indebtedness and for other purposes of the mortgage. The mortgage recited that the enumeration and description of the property was intended to cover and include not only all the sheep owned by the mortgagors, but all additions and accretions thereto. On October 28, 1898, King & Fowler executed and delivered to the defendant in error another mortgage, conveying to Pollard, trustee, 18,000 head of sheep therein described, which last-named mortgage recites that "all previous mortgages executed by us in favor of the mortgagee herein, covering the aforesaid sheep, or any part thereof, are not to be extinguished by the execution of this mortgage, but shall remain in full force and effect for the purposes and considerations therein and herein set forth; the above enumeration and description being intended to cover and include not only all the sheep owned by the mortgagors, but all additions and accretions thereto are specially included in and covered by this mortgage." Four days before the date of the mortgage just last described, namely, on October 24, 1898, King & Fowler mortgaged to the Pecos Valley Bank, the plaintiff in error, all of their wool now stored in the warehouse owned by the C. F. Thomason estate, situated in Pecos City, in Reeves county, numbering 186 sacks, marked "K. & F.," and aggregating about 40,500 pounds, to secure the payment of $3,640 that day borrowed of the bank. In all of these transactions King & Fowler were represented by Tom King, under a power of attorney from each of the partners authorizing him to act for them. He (Tom King) sold this wool in May, 1899. He paid the proceeds of the sale to the plaintiff in error on the indebtedness secured by its mortgage on the wool. To recover these proceeds, amounting to $3,390.23, the defendant in error brought its action, claiming, however, a larger amount of damages.

On the trial the defendant in error (the plaintiff below) put in evidence the two mortgages held by it, also the mortgage from King & Fowler to the plaintiff in error, and an admission that the wool in question was shorn by the firm of King & Fowler some time about the first part of October, 1898; that it was shorn from all the sheep that King & Fowler owned at that time, and was placed on storage by them in the warehouse of the estate of Thomason, in Pecos City, in Reeves county, Tex., about the first part of October, 1898; that the wool remained on storage in the warehouse in Reeves county until it was sold and shipped to St. Louis about May, 1899; that the plaintiff in error loaned the firm of King & Fowler $3,640 on October 24, 1898, and took the chattel mortgage on the wool to secure the same; that the wool was sold about May, 1899, and shipped to St. Louis, and that King & Fowler, out of the proceeds arising from the sale of the wool, paid to the defendant, the Pecos Valley Bank, $3,390.23, which was by the bank credited upon the note to secure which the mortgage was given to the bank. Here the plaintiff closed.

Thereupon the defendant introduced Tom King, who testified: That he knew A. T. Atwater; had business dealings with him; negotiated the first loan with him in St. Louis, and also negotiated with him in St. Louis for the renewal of the first mortgage and the giving of the second mortgage given to the defendant in error, all of which negotiations took place at the office of the defendant in error in St. Louis, between the witness and Mr. Atwater, who was then acting secretary for the defendant in error. When the first mortgage was given, Mr. Atwater took down a memorandum, and told the

witness to go to his home office, and said Mr. Ware would fix it up. That the witness went from St. Louis to the office of the defendant in error in Ft. Worth, where the first mortgage was drawn up and executed. This witness testified: That he used the money gotten from the Pecos Valley Bank to pay Mr. Bowen and Mr. Thomason for supplies they had furnished to run the sheep, except about $1,800 or $2,000 which he used in buying sheep. That there had been a spring clip of wool shorn from these sheep in the spring of 1898, which clip the witness sold to a man by the name of Prestige, and used the proceeds to pay running expenses of the sheep. That he told the officers of the defendant in error, at its offices in St. Louis and in Ft. Worth, that he had applied the proceeds of the first clipping which was taken from these sheep in the spring of 1898 to pay running expenses of the sheep. That he told this to Mr. Ware, Mr. Atwater, and Mr. Buel. That they did not say anything, and did not make any objections to his having used the wool for that purpose. That he told Mr. Buel, the president of the company, in Chicago, that he had gotten some money on the wool which was stored in the warehouse in Pecos City, Reeves county; that he had gotten this money .from the plaintiff in error, and also had gotten supplies from Mr. Bowen. That it was in February, 1899, that he gave Mr. Buel this information. That Mr. Buel did not make any objection when told about this. That at the time witness made the first mortgage Mr. Atwater was the secretary of the Evans-Snider-Buel Company. Here the defendant below offered to prove by the witness that, at the time he made the arrangements in St. Louis with A. T. Atwater for the extension of the loan and the execution of the second mortgage, he had an arrangement with Atwater that the wool should not be included in the second mortgage, and that Atwater, acting on behalf of the plaintiff as its secretary, agreed that King & Fowler might sell and use the wool for the purpose of raising means and paying expenses of running the sheep. This evidence was objected to by the plaintiff (the defendant in error) and excluded by the court on the ground "that it varied the terms of the written mortgages, and because no authority was shown authorizing Atwater to bind the plaintiff."

After the defendant below closed its testimony the plaintiff introduced the deposition of its president, M. P. Buel, and the deposition of its vice president, C. A. Snider, each of whom testified, in substance, that he never agreed with King & Fowler that the wool should not be covered by the mortgages to the plaintiff, and never authorized any person to make any such agreement with the plaintiff, and that he never at any time authorized the firm of King & Fowler to sell or dispose of the wool to any one for any purpose, and that there was no understanding or agreement that King & Fowler should dispose of the wool for the purpose of paying the running expenses of the sheep. It also introduced two depositions of A. T. Atwater, who testified, in substance, that he was the secretary and manager of the St. Louis office of the plaintiff when the two mortgages were given to it by King & Fowler; that the mortgages were executed at the Ft. Worth office of the plaintiff, and that he was not present at the time of their execution; that he never made any agreement with King & Fowler that the wool should not be included in the mortgages, and never made any agreement with them, and never had any understanding with them, that they could use the wool for the purpose of raising supplies and means for the purpose of paying the running expenses of the sheep, and never authorized them to so use the wool, or any part thereof; that he made no such agreement with them, or either of them, nor with their representative, Tom King, nor did he authorize any person to make any such agreement with them; that on the 2d of March, 1898, when Tom King came to the office of the plaintiff at St. Louis, the witness there made, in his own handwriting, the memorandum which he attached to his deposition, a copy of which was sent to the Ft. Worth office for the completion of the deal through the plaintiff's representatives there; that he never had any agreement or understanding with Tom King, representing either himself or King & Fowler, that they could use the wool for the purpose of raising means and procuring supplies to enable them to properly care for the sheep, or for any other purpose; that the memorandum attached to his deposition was the only memorandum that he ever made in the premises, and which was made at

the time of the arrangement for the first mortgage given, which is dated March 2, 1898.

After this and other testimony had been offered by the plaintiff below, the defendant below again offered to prove by the witness Tom King the following facts: "That some time in the month of September, 1898, he, as the agent and representative of the firm of King & Fowler, went to St. Louis, to the general office of the plaintiff in that city, for the purpose of renewing the first mortgage. That when he arrived there he met A. T. Atwater, who was secretary of the plaintiff, and at that time he stated to the said A. T. Atwater that he had come up there for the purpose of renewing the first mortgage and the indebtedness secured by it, and that the said King & Fowler were unable to properly care for said sheep without having the use of the wool for the purpose of procuring supplies and means to defray the expenses of running the sheep, and that he then stated to the said A. T. Atwater that the said King & Fowler would not be willing to renew the first mortgage unless they could have the privilege of selling the wool, and using the proceeds in defraying the expenses of running the sheep. 'I negotiated the first loan, as well as the extension thereof, with Mr. Atwater, in St. Louis, and he attended to the entire business for the plaintiff in connection with the two mortgages; and it was the understanding at the time the first mortgage was executed that the wool was not to be included in the mortgage, and I told Mr. Atwater at the time the second mortgage was executed that the wool was included in the first mortgage, and that I did not know it was so included until after the first mortgage was given; and I then told Mr. Atwater that, unless he would agree to leave the wool out of the second mortgage, King & Fowler would not renew the mortgage, and he agreed to do so.' And it was then agreed by and between the witness Tom King and the said A. T. Atwater that the wool should not be covered by the second mortgage, and that they would extend the time, take new notes and a new mortgage covering the sheep only, and that the said King & Fowler might use whatever wool had been shorn or that should be thereafter shorn from any of the said sheep covered by either of the said mortgages, for the purpose of procuring feed, supplies, and raising means for the purpose of paying the running expenses of the said sheep, and that the wool should be free from the lien of said mortgages, and that at the time of this conversation and agreement between the witness and the said A. T. Atwater at the plaintiff's office in St. Louis in September, and before the second mortgage was executed, and after the said Atwater had agreed with the said Tom King, as the agent and representative of King & Fowler, that the wool should not be covered by the second mortgage, but that all the wool on hand and wool subsequently to be shorn from said sheep might be used by the said King & Fowler for the purpose of raising means and supplies in caring for said sheep, the said A. T. Atwater made a pencil memorandum to that effect, which he said he desired to send to their Ft. Worth office, for them to be governed by in drawing up the second mortgage. That said memorandum was not signed by any person, but was a short memorandum of their agreement, and was read by the witness, which he said he desired to send to the Ft. Worth office, as before stated, for their information there in executing the second mortgage. That after said agreement was made in St. Louis between the witness and said A. T. Atwater, and before the second mortgage was executed, he (the witness) went to Pecos City, and relying upon his agreement with said A. T. Atwater that the said King & Fowler might use all wool on hand and to be shorn thereafter from said sheep for the purpose of raising means and supplies to pay the running expenses from said sheep, and relying upon the same, he borrowed said sum of $3,640 from the defendant, the Pecos Valley Bank, and executed the mortgage to said bank on the wool that was then on storage in the warehouse in Pecos City, which money so borrowed from the defendant was used in paying expenses and debts in connection with the running of the sheep. That the memorandum of their agreement is not the one which the witness A. T. Atwater refers to in his deposition as 'Exhibit A.' That memorandum was made in March, 1898, and is written in ink, and the memorandum to which the witness refers was written in pencil by said A. T. Atwater, and was made in September, at the time they had the oral agreement referred to by the

witness." To the introduction of this evidence the plaintiff below objected on two grounds: (1) That the facts showed that there was a written memorandum of the agreement, and that, as the plaintiff had not been notified to produce it, parol evidence was not competent to show its contents; (2) because the testimony offered varied the terms of the written mortgages, and therefore was incompetent. The court sustained the objection on the first ground. Substantially the only contested issue of fact presented on the trial was that to which the rejected testimony of the witness Tom King related; and it having been excluded, as above shown, the court instructed the jury to return a verdict for the plaintiff for $3,390.23, the sum received by the defendant from the proceeds of the sale of the wool. The assignment of errors is to the effect (1) that the court erred in rejecting the testimony of the witness Tom King; (2) that the court erred in directing a verdict for the defendant in error.

Millard Patterson and C. N. Buckler, for plaintiff in error.

A. L. Matlock, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

As is shown by the foregoing statement of the case, there is some apparent discrepancy as to the grounds on which the objections to the testimony of the witness Tom King were sustained by the court. In the bill of exceptions No. 1 it is stated that this evidence was objected to by the plaintiff and excluded by the court on the ground that it varied the terms of the written mortgages, and because no authority was shown authorizing Atwater to bind the plaintiff. This relates to the ruling announced when the testimony was first offered by the defendant. After the defendant had closed its testimony, and the plaintiff had introduced numerous witnesses in rebuttal touching the agreement (or absence of any such agreement, as was claimed by the defendant, and sought to be supported by the testimony of the witness King), that witness was recalled by the defendant, which again sought to show by him the facts that it had offered to prove by him when he was first on the stand, with such elaboration as the rebutting testimony which had been offered by the plaintiff invited. Thereupon the plaintiff renewed its objection, stating as the grounds thereof (1) that the witness showed that there was a written memorandum of the agreement, and that it was the best evidence of what the agreement was; that, as the plaintiff had not been notified to produce the written memorandum, parol evidence was not competent to show its contents; and (2) that the testimony of the witness was incompetent because it varied the terms of the written mortgages, "which first objection was by the court sustained, and defendant was not permited to introduce the testimony." From this it would seem that the circuit court held that the nature and extent of the proof offered by the plaintiff in rebuttal waived the objection placed upon the ground that the proof varied the terms of the written mortgages, and the objection not being based in any measure on the ground that no authority was shown authorizing Atwater to bind the plaintiff, and it then for the first time appearing that at the time of the negotiations between the witness and Atwater, in the fall of 1898, to which the offered testimony related, Atwater made a short memorandum of their agreement (which was not signed by any person, but

was read by the witness), the objection taken that, as the witness showed there was a written memorandum made at the time of the agreement, it was the best evidence of what the agreement was, and that, as the plaintiff had not been notified to produce it, parol evidence was not competent to show its contents, was the objection which was sustained, and on this ground the testimony was excluded.

The plaintiff, in its pleadings, seeks to support its claim or right to recover on the two mortgages taken by it from King & Fowler, and from the wording of the second ground of the objection made to the introduction of Tom King's testimony when it was last offered, at the very close of the trial, it would seem that the trial was conducted on the theory that the plaintiff's claim was supported by the contract of the parties evidenced, by each of the mortgages, or by both of them considered together; for the language of the second ground of the objection is, "because it varied the terms of the written mortgages," using the plural number. The rejected testimony tended to prove that in September Tom King, repesenting King & Fowler, and A. T. Atwater, representing the plaintiff, had agreed some time in the month of September, 1898, that King & Fowler might use whatever wool had been shorn, or that should be thereafter shorn, from any of the sheep covered by the mortgage that had been executed, for the purpose of procuring feed, supplies, and raising means for paying the running expenses of the sheep, and that the wool should be free from the lien of these mortgages. The second or renewal mortgage given by King & Fowler to the plaintiff was not given until October 28, 1898, prior to which date the wool in question was mortgaged to the defendant below for cash in hand paid to a larger amount than the proceeds of the sale thereof received by the defendant, and for which the plaintiff recovered judgment in this case. If, therefore, the fact was, as the excluded testimony tended to show, that such an agreement was had between the plaintiff and King & Fowler some time in the month of September, 1898, and that, acting on that agreement, King & Fowler procured money from the defendant on the mortgage to it executed and delivered, and the money thereon received before the making of the second or renewal mortgage to the plaintiff, the execution and delivery of that mortgage could not affect the lien and right which the defendant acquired by its contract of the earlier date. So far as relates to the rejection or admission of this excluded testimony, the plaintiff below can rely only on its original mortgage. That instrument, bearing date March 25, 1898, by its express terms includes not only the sheep described, but the wool and fleece thereon when shorn. It provides that the same may be shorn by the mortgagors; that the wool may be marketed, with the consent of the mortgagee, given in writing; that the proceeds shall be applied to the indebtedness described in the mortgage; and that the mortgagee shall have the right to seize or recover the wool, or the proceeds thereof, for the purpose of applying the same upon the indebtedness and other purposes of the mortgage. These provisions of the mortgage it was competent for the parties thereto to annul or modify by parol agreement subsequently made, and the rule invoked by the objection that the testimony offered varied the terms of the written mortgages

was not applicable as to the terms of the first mortgage. If we should assume, for the sake of the argument only, that the plaintiff's case was supported in any measure by what is termed in the record the "second mortgage" (that is, the second mortgage given the plaintiff, of date October 28, 1898), the written memorandum of the agreement previously made would be as incompetent to contradict or vary the terms of that mortgage as any parol testimony. And it would seem that an objection to parol evidence offered, that it was not competent to prove the agreement sought to be established, because it showed that a memorandum in writing of the agreement was made at the time, and the adverse party had not been notified to produce the written memorandum, must be without force, when it appears that the memorandum in writing, if produced and offered, would not be admissible, over objection, to alter the terms of the mortgage in question; both the writing and the parol proof of its contents being subject to the graver objection. The rule of evidence that, where the parties to a contract have reduced their agreement to writing, parol evidence shall not be received to alter or contradict the written terms, is familiar, and the reasons which support it elementary. 1 Greenl. Ev. §§ 275–286. It is often invoked in cases to which it is not applicable, and it is sometimes suggested, and acted upon in the moving progress of a trial before a jury, to conditions of offered testimony to which on first impression it appears to be applicable, and is therefore then enforced. It has doubtless been observed by those called to consider such matters that the first impression of good lawyers and of good judges seems to accept it as a universal rule that, where written evidence of a fact exists, all parol evidence of the same fact must be excluded. But such is not the rule. Keene v. Meade, 28 U. S. 1, 7 L. Ed. 581. The fact sought to be established in this case is the agreement of the plaintiff to allow the mortgagors to use the wool covered by the first mortgage to obtain means to meet the necessary expense of the management of the herds of sheep mortgaged to it. This the defendant offered to prove by the testimony of one of the acting parties, who, in stating the time and circumstances and terms of the agreement, referred, as a part of the res gestæ of that transaction, to a pencil memorandum made by the other acting party thereto, and read by the witness, which had for its purpose, as the witness claimed, the instructing of those who were to draft the renewal mortgage. This memorandum was wanting in essential elements of a written contract, and was so merged into the contract that thereafter was written as, in the absence of fraud or of other conditions not necessary here to name, lost any force it may ever have had to determine the rights and relations of the parties as fixed by the renewal mortgage. It did not, however, lose its force as a part of the res gestæ to support the parol testimony offered to evidence the agreement claimed to have been made in September, 1898,—the issuable fact in this case,—and, if the writing had been produced and offered for that purpose, would have been admissible. It does not follow that because it would have been admissible, and had been reduced to writing, its existence, production, and offer would exclude the other parol testimony relating to the same subject. It was not

produced, and it is objected that its contents embrace not only the best but the only admissible evidence of the terms of the agreement to which it relates, and that oral testimony of its contents could not be given because notice had not been given to the adverse party to produce it. The excluded evidence tended to show that the written memorandum was not in the possession or control of the defendant; that when seen by the witness it was in the possession and control of the secretary of the plaintiff. The plaintiff had introduced that officer as a witness, and he had testified that no such memorandum ever existed. Numerous other witnesses had testified to their connection with the plaintiff and with these transactions, and that they had no knowledge of the existence of any such written memorandum. In this condition of the proof, granting that it was such a paper as ordinarily would require the giving of notice to produce it, as a condition precedent to offering parol testimony as to its contents, it is clear that the rule requiring such notice in proper cases has no application here. The testimony given by the plaintiff was by deposition of its different officers and employés, taken in ample time before the trial, and showing clearly it would be not only unnecessary but futile to require the giving of a more formal notice to the plaintiff to produce a paper which these incarnations of the corporation substantially concurred in swearing did not exist. "Evidence, when offered at the trial, must be assumed to exist, and to be true, for the purpose of determining the question of its admissibility." The pencil memorandum in question was not offered by the defendant, nor did the defendant offer to prove its contents to support or establish its defense; but it offered to prove a parol agreement made by the plaintiff with the mortgagors, King & Fowler, after the execution of the mortgage in contemplation of a renewal thereof, to the effect that the wool already shorn or to be shorn might be used to meet the expense of "running the sheep," and that the wool should not be included in the renewal mortgage, in connection with which testimony, and as a part of it, the witness referred to the fact that the representative of the plaintiff at the time of making this parol agreement made the pencil memorandum in question for the instruction and guidance of the parties at the plaintiff's office in Ft. Worth, where the renewal mortgage was to be made. The plaintiff cannot recover in this suit on the renewal mortgage, for the reasons already given. The defendant does not claim under either of the mortgages. Therefore the renewal mortgage and the pencil memorandum to which the testimony relates can only be considered as extrinsic evidence to support or contradict the other testimony offered to show that in September, 1898, the plaintiff had agreed that King & Fowler should use the wool shorn from the mortgaged sheep to meet the expense of "running the sheep." Whatever may be the sound construction of the renewal mortgage as to its giving, or not, a lien on the wool and fleece of the flocks, it is manifest that the language of that mortgage is not identical with the language of the first mortgage in relation to that subject. And while, if the action was on the second mortgage, its sound construction by the court might exclude any parol proof tending to modify its terms, when used—as it can only be used in this

case—as extrinsic evidence to sustain or oppose the contention of the defendant, the inferences of fact to be deduced from the difference in its language and the language of the original mortgage are for the consideration of the jury. Barreda v. Silsbee, 62 U. S. 146, 16 L. Ed. 86. Also, whether any such pencil memorandum was ever written, and what, if written, it contained, presented a question of fact depending on the credibility of the witnesses; and that question of fact was for the consideration of the jury, and not for the determination of the court. Dunbar v. U. S., 156 U. S. 185, 15 Sup. Ct. 325, 39 L. Ed. 390.

We conclude that the trial court erred in rejecting the testimony of the witness King, and in directing a verdict for the defendant. Therefore the judgment of the circuit court is reversed, and the cause is remanded to that court, with direction to award the defendant a venire facias de novo.

SHELBY, Circuit Judge (dissenting). The record shows that the plaintiff in error offered to prove by Tom King that, at the time the arrangements were made for the extension of the loan and the execution of the second mortgage, he had an agreement with A. T. Atwater "that the wool should not be included in the second mortgage." The assignment of error is that the court erred in refusing to permit the witness to testify to an agreement "that the wool already shorn and to be shorn from the sheep should not be included in the second mortgage." The pleadings, the evidence, and the assignment of error seem to me to raise the plain question whether or not the negotiations preceding the execution of the second mortgage can be received in evidence to show that it should have been so written as to release certain property described in the first mortgage. It seems to me that this question should be answered in the negative, and that it would necessarily follow that the circuit court did not err in excluding the evidence. No principle of evidence is better settled than that, when persons put their contracts in writing, it is, in the absence of fraud, accident, or mistake, "conclusively presumed that the whole engagement and the extent and manner of their undertaking was reduced to writing." Bast v. Bank, 101 U. S. 93, 25 L. Ed. 794, 9 Notes U. S. Rep. 915; Lanes v. Squyres, 45 Tex. 382. I think the judgment should be affirmed.