JOHN H. BELCHER AND ELMORE-COOPER LIVE STOCK COM-
MISSION COMPANY v. CASSIDY BROS. LIVE STOCK
COMMISSION COMPANY.

Decided April 6, 1901.

1.—Confusion of Goods—Equity—Apportionment.

Where there has been a confusion of goods, such as stock cattle, resulting
from accident or the wrong of a third party, and the proportion of interest of
each claimant may be reasonably ascertained notwithstanding the confusion,
equity has power to afford a remedy through an apportionment of the property.

2.—Same—Judgment Foreclosing Chattel Mortgage—Sheriff Given Judicial Power.

A judgment of foreclosure directing the sheriff to seize out of a larger num-
ber of cattle and to sell "an interest of 304 head, the fair average of all of said
cattle," confers power judicial in its character, and is erroneous where the mort-
gagee in whose favor it is rendered has, as against the other parties, no right
of selection. Oxsheer v. Watt, 91 Texas, 124, distinguished.

Error from Archer. Tried below before Hon. A. H. Carrigan.

*Galloway & Templeton,* for plaintiffs in error.

*F. E. Dycus,* for defendants in error.

CONNER, CHIEF JUSTICE.—Overruling all assignments that ques-
tion the sufficiency of the evidence to sustain the verdict and judgment
in appellee's favor, we find, as briefly as we can state them, that the
facts established by the verdict, judgment, and evidence are, that on the
24th day of November, 1897, W. J. Belcher, doing business with his
brother, J. B. Belcher, a silent partner, purchased from the firm of Cobb
& Frazier about 800 stock cattle of the same general classes as specified
in the several mortgages hereinafter mentioned. Of this number 625
were branded O on the shoulder and with various other brands not
necessary to notice, and 150 head were branded O on the shoulder and
⊢ on the thigh, but with no other brands. The said 625 cattle were
on said day duly mortgaged to Offutt, Elmore & Cooper, a live stock
commission company of Kansas City, Mo., to secure the sum of $9360
advanced to W. J. Belcher with which to make said purchase. On the
10th of March, 1898, W. J. Belcher duly mortgaged to Elmore & Cooper,
who in the interim had succeeded the firm of Offutt, Elmore & Cooper,
said 150 cattle branded O⊢ to secure $2500 advanced to him and
which was also used in payment of the stock of cattle purchased of Cobb
& Frazier. The original mortgage and the obligation secured thereby
was renewed at several times not necessary to notice by taking new obli-
gation and new mortgage executed by W. J. Belcher until on November
21, 1898, when W. J. Belcher again renewed it by executing new obli-
gation and mortgage to Elmore & Cooper for the sum of $9861.28, be-
ing the principal and interest due on the original mortgage to Offutt,
Elmore & Cooper. This mortgage, as we construe it in the light of the

evidence, covered and was intended to cover said 625 cattle and their increase only, with perhaps some others not included among said 150 cattle branded ◯⊢ , or their increase. On December 22, 1898, said mortgage for $2500 on said 150 cattle not having been paid, and W. J. Belcher being unable to pay the same to the then holders, who before maturity and in due course of trade had acquired the same from Elmore & Cooper, the defendant in error, the Cassidy Bros. Live Stock Commission Company, a private corporation, advanced to W. J. Belcher the sum of $10,007, and to secure the same took a mortgage from W. J. Belcher on 616 cattle; of which 212 were branded ◯ on left shoulder and ⊢ on left thigh; the 212 being said original 150 cattle in that brand and the increase thereof. In this transaction the $2500 mortgage and obligation with accumulated interest was taken up, canceled, and surrendered to W. J. Belcher. This mortgage to defendant in error was made to cover not only the cattle therein described, but also all accretions, additions, and increase thereof. It also appears that there were several subsequent renewals in like manner as before described of the said mortgage to Elmor & Cooper dated November 21, 1898, in some of which, particularly the one remaining unpaid at the time of the intervention hereinafter stated, the terms were sufficiently comprehensive to include all cattle involved in this suit.

The said debt and mortgage of December 22, 1898, to defendant in error not having been paid, it instituted this suit May 23, 1900, against W. J. Belcher, J. B. Belcher, and plaintiff in error John H. Belcher, who, in the meantime, had become the purchaser of the entire stock of cattle herein involved, and prayed to recover their debt and to foreclose their said mortgage lien on some 304 cattle sequestrated by them. Plaintiff in error, the Elmore-Cooper Live Stock Commission Company, as successor to the rights of Elmore & Cooper, intervened, and together with the Belchers set up the original mortgage to Elmore & Cooper with the several renewals thereof; prayed to have the same established, and in substance insisted that said mortgage was superior to that of defendant in error, and that in fact none of the cattle sequestrated and claimed by defendant in error as subject to its claim was covered by the descriptive terms of its mortgage. Defendant in error answered and alleged among other things, in substance, that if the cattle claimed and originally mortgaged to it could not be identified, it was because such cattle had wrongfully been intermingled and confused with others of the stock by intervener and defendants, and prayed that an equitable apportionment of the general herd be made, and for general relief.

The cause was submitted to a jury upon special issues. The court, upon the return of the verdict, rendered judgment thereon for defendant in error against W. J. and J. B. Belcher for the balance claimed to be due, and against all of the defendants and intervener, foreclosing its lien; the judgment reciting that of the cattle originally mortgaged to the plaintiff 205 head and their increase were in the hands of defendants and that said cattle were described as follows: "123 cows, 38 two-

year-old heifers, 1 two-year-old steer, 37 three-year-old heifers, 22 yearling steers and 22 yearling heifers, and that said cattle were branded O⊢ and other brands, and were mixed with 786 head of other cattle in said pasture, making in all 1090 head," etc., and that intervener was entitled to a mortgage on 786 head of said cattle. It was therefore decreed "that plaintiff's lien as it existed on the 22d day of December, 1898, be and it is foreclosed as to said 304 head of cattle of the class and kinds of cattle hereinabove described, and that an order of sale issue directing the sheriff or any constable of Archer County to seize and sell as under execution an interest of 304 head, the fair average of all of said cattle   *   *   *   ; and to put the purchaser at said sale in possession of 304 head of cattle selected out of the classes and kinds of all of said bunch, and that such sale may be made passing to the purchaser all the right, title, and interest of defendants and intervener in and to said cattle."

The defendants and intervener filed a motion for a new trial, which was overruled, and notice of appeal was duly given by plaintiffs in error. The defendant John H. Belcher and the intervener alone have appealed and assigned errors.

The verdict of the jury expressly established the following facts: That on November 21, 1897, W. J. Belcher had in his possession the 625 cattle then mortgaged to Offutt, Elmore & Cooper, and so had and possessed the 212 cattle branded O⊢ December 22, 1898, as described in the mortgage thereon then given to defendant in error; that at the time of the trial John H. Belcher then had in his possession, covered by appellee's mortgage, 123 cows, 61 calves, 37 three-year-old heifers, 44 yearlings, 38 two-year-old heifers and one two-year-old steer, as claimed by defendant in error; that the said original 212 cattle mortgaged to defendant in error had been mixed with other cattle branded OV, OT or O (covered by intervener's mortgage) by W. J. and J. B. Belcher, so that the cattle covered by the two mortgages "can not be separately described without dividing them." We understand this to mean, in view of the evidence, that the specific cattle described in defendant in error's mortgage (save seven head that were found and identified) have been so branded, mixed, and intermingled by W. J. Belcher and J. B. Belcher as that they can not now be certainly identified and pointed out by means of the original O⊢ brand. The evidence fails to show that intervener was a party to such wrongful intermingling, or that defendant in error was guilty of negligence in relation thereto. In this connection we should perhaps further state that J. H. Belcher, a short time prior to the institution of this suit, purchased the stock of cattle involved from his sons W. J. and J. B. Belcher, as consideration therefor agreeing to assume, pay off and discharge the debt and mortgage to intervener, but to which contract the latter named party has not yet agreed.

The material question in the case is whether defendant in error, an innocent mortgagee, under the facts stated, has the right to have set

apart and subjected to its mortgage a proper proportion of the entire herd or stock of cattle now in fact branded in brands specified in intervener's mortgage.

Plaintiffs in error insist, in effect, that they are innocent purchaser and mortgagee, respectively; that the mortgage to intervener constitutes a prior lien on all the cattle in controversy; that the commingling and confusion, if any, not having been done or induced by it, ought not to confer upon defendant in error the right to postpone the Elmore-Cooper Live Stock Commission Company's mortgage as to any portion of said cattle, and that defendant in error must fail in his suit except as to such cattle as can now be identified as included in its mortgage.

With the contention of plaintiffs in error we have been unable to agree. No issue of a purchaser or mortgagee for value and without notice was presented in their pleadings; besides upon the facts, we find that neither of the plaintiffs in error was thus related to the transaction. The consideration for the purchase of John H. Belcher was an agreement to substitute his own obligation and mortgage for those of J. W. Belcher and in that mode discharge the obligation and mortgage of the latter to the Elmore-Cooper Live Stock Commission Company, but this agreement was not consummated. Said commission company pleads its mortgage as a mere extension of the original debt and mortgage of November, 1897, to Offut, Elmore & Cooper, and we think this in fact the true purport and effect of the several extensions pleaded and proven. So construing the transactions, its mortgage was to secure a pre-existing debt, and of right, as against defendant in error, was upon the 625 cattle originally mortgaged and their increase, and not upon any of the cattle or increase mortgaged to defendant in error December 22, 1898. So that we come to the material question of apportionment stated.

We have been cited to no case precisely in point, but we are nevertheless of opinion that the judgment in the particular now under consideration should be sustained upon equitable principles. There is nothing in the inherent difficulty of a division that should prevent. In the case of Oxsheer v. Watt, 91 Texas, 124, our Supreme Court upheld a mortgage upon 50 mares branded F2 out of a stock of 300 mares in the same brand. This ruling, however, was upon the theory that by the execution of the trust deed in that case the owner impliedly conferred upon the mortgagee the right to select from the entire herd the 50 mares mortgaged. But we doubt if the principle should be made to apply to a mortgagee in the attitude of the Elmore-Cooper Live Stock Commission Company in this case. It is true that defendant in error's mortgage is in the form of a trust deed, the conveyance of the cattle therein described being to a trustee named who is given power of sale, so that, as against the makers, W. J. and J. B. Belcher, defendant in error, it would seem, would have the right in the case before us of selecting the number and class mortgaged to it from the entire herd, which, by act of W. J. Belcher, had been caused to bear the same brand and to be-

come indistinguishable. But as we construe the verdict, plaintiffs in error stand acquitted of participation in the wrongful confusion, and it would therefore seem as if the right of the appellant commission company to establish a lien on the cattle rightfully included in its mortgage is equal to the right of defendant in error to do the same in reference to its mortgage. In other words, the mortgagees here are equally innocent of intentional wrong, and neither should be given advantage in equity over the other.

We make the following quotation from the opinion in the case of Robinson v. Holt, 39 New Hampshire, 563, which seems somewhat applicable here: "The doctrine of the confusion of goods has been often discussed, and may be considered as clearly and distinctly settled. If the goods of several intermingled can be easily distinguished and separated, no change of property takes place, and each party may lay claim to his own. If the goods are of the same nature and value, although not capable of an actual separation by identifying each particular, if the portion of each owner is known, and a division can be made of equal proportionate value, as in the case of a mixture of corn, coffee, tea, wine, or other article of the same kind and quality, then each may claim his aliquot part. * * *"

To the same general effect is the language of Mr. Story in his work on Bailments, ninth edition, section 40, where, after giving the general rule applied as against one wrongfully mixing the goods of another with his own, he states, page 42: "But there may be a case of confusion of property, neither by consent, nor by willfulness, as where the bailee, by negligence, or unskillfulness, or inadvertence, mixes up his own goods of the same sort with those bailed; and there may also be a confusion arising from mere accident and unavoidable casualty. In the latter case, that of intermixture by accident, the civil law deemed the property to be held in common, whether the mixture produced a thing of the some sort or not; as if the wine of two persons were mixed by accident. The like rule would probably be adopted in our law, under like circumstances." Citing Spence v. Insurance Co., Law Reporter, 3 C. P., 427, which, as shown by the note, was a case where "Several thousand bales of cotton were shipped at Mobile for Liverpool, forty-three of which belonged to S., and the rest to various other parties. The vessel was wrecked at Key West, and some of the cotton lost, and all more or less damaged. The marks on the bales saved were so obliterated by sea water that they could not be identified as belonging to any particular consignee; and it was held that the loss should not fall on any one owner, but that all became tenants in common in all the cotton saved, in proportion of each one's shipment to the whole cargo."

Applying these principles to the case before us, we overrule all assignments attacking the judgment because of the apportionment of the cattle the court undertook to make between the respective mortgagees. While a mixture of cattle on the range may not be altogether analogous to a mixture of cotton, corn, coffee, tea, wine, etc., we nevertheless are

of opinion that equity is not without power to afford a remedy in such cases for a confusion resulting from accident or the wrong of a third party, where, as in this instance, the proportion of interest of each claimant may be reasonably ascertained, notwithstanding the confusion. We are, however, of opinion that, as assigned, the judgment was erroneous in directing the sheriff to seize and sell as under execution "an interest of 304 head, the fair average of all of said cattle." The power thus conferred upon a ministerial officer was judicial in its character, and consequently one which the court, and not the sheriff, should exercise. True, in Oxsheer v. Watt, supra, a similar decree was entered, but we do not understand this to have been approved by the Supreme Court in the disposition made of that case, for it was merely held that the error complained of was not prejudicial. That case is to be distinguished from this in that Watt had the absolute right of selection, and hence the selection by the officer, whether of a fair average or otherwise, was not to the detriment of Oxsheer, while in the case before us defendant in error had no such right, that is, as against the other mortgagees. As between the respective mortgagees the case finally resolved itself into one of partition of personal property made necessary by a confusion of the mortgaged property for which neither was to blame, and our statute upon that subject is substantially applicable. Rev. Stats., chap. 2, title 77. True this chapter does not exclude every other method of partition, as is expressly declared in the first article of the next succeeding chapter, but it seems to us to be sufficient for the purposes of partition in question.

Since, then, the judgment in other respects is approved, but must be reversed on this ground, we have concluded that the case should be remanded with instructions that the issues covered by the special verdict be not reopened, but that such further proceedings be had in accordance with the chapter above referred to as will result in a fair and equitable division of the cattle, or of their proceeds in case of sale, between the respective claimants, and it is accordingly so ordered.

*Affirmed in part.*
*Reversed and remanded in part.*

Writ of error refused.