## GREAT NORTHERN STATE BANK v. RYAN.

(Circuit Court of Appeals, Eighth Circuit.   August 28, 1923.)

No. 6319.

1. **Chattel mortgages ⬤═219—Consent by mortgagee to sale is waiver of lien.**
   The mortgagee waives his lien by consenting to a sale of the mortgaged property by the mortgagor.

2. **Chattel mortgages ⬤═227—Lien does not follow proceeds of property sold with mortgagee's consent.**
   The mortgage lien does not follow the proceeds of mortgaged property sold with mortgagee's consent.

3. **Chattel mortgages ⬤═219—Purchaser of property with mortgagee's consent takes free from mortgage.**
   Purchaser of mortgaged property with consent of mortgagee takes title free from mortgage.

4. **Chattel mortgages ⬤═262(1)—Parties may agree as to manner of sale of mortgaged property.**
   Where not in violation of statute or of public policy, or in fraud of rights of third persons, the parties to a chattel mortgage may agree as to the manner of sale of the property different from that prescribed by statute.

5. **Chattel mortgages ⬤═262(1)—Sale of property not invalidated by irregularities in method of sale.**
   Failure to follow the statutory method of foreclosure does not necessarily render sale of the mortgaged property invalid.

6. **Chattel mortgages ⬤═262(1)—Private sale of property by agreement between the parties held valid and to impress proceeds with lien in favor of mortgagee.**
   By agreement between bankrupt, who was in the dairy business, and defendant bank, which held a mortgage on some of his cows, the business was sold at private sale and the mortgage debt paid out of the proceeds. The transaction was in good faith, and the sale an advantageous one. *Held* that, as to the mortgaged property, the sale was equivalent to a foreclosure, and the proceeds were impressed with an equitable lien in favor of defendant.

7. **Chattel mortgages ⬤═262(1)—Confusion of goods ⬤═1—Sale of mortgaged property with other property by consent held not confusion of goods, and not waiver of mortgage lien.**
   The fact that mortgaged property, with the consent of the mortgagee, was sold with other property, without wrongful intent, *held* not to render applicable the doctrine of confusion of mortgaged property, and not to be a waiver of the mortgage lien, and the rights of the mortgagee in the proceeds may be determined in equity.

8. **Liens ⬤═7—Equitable lien may be created by verbal agreement.**
   A verbal agreement is sufficient to create an equitable lien.

9. **Bankruptcy ⬤═155—Mortgage held not lien on substituted property, as against trustee in bankruptcy of mortgagor.**
   Where some of the cows included in a mortgage were sold with consent of the mortgagee, and others purchased to replace them, the mortgage did not extend to those purchased as against the creditors in bankruptcy of mortgagor, some of whom were the sellers of such cows.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit in equity by Walter T. Ryan, trustee in bankruptcy of Leonard F. Schmid, against the Great Northern State Bank. Decree for complainant, and defendant appeals. Reversed and modified.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

George Cahill, of St. Paul, Minn. (Harry H. Peterson and Harrison W. Oehler, both of St. Paul, Minn., on the brief), for appellant.

R. R. Barry, of South St. Paul, Minn., for appellee.

Before STONE and KENYON, Circuit Judges, and TRIEBER, District Judge.

KENYON, Circuit Judge. The following state of facts has produced this controversy: Leonard F. Schmid was engaged in the dairy business in the vicinity of St. Paul, Minn. He was a customer of, and borrowed money at various times from, appellant. In October, 1917, he executed a chattel mortgage to appellant upon a number of cows to secure the sum of $700. September 10, 1919, he executed a new note and mortgage for $1,622, covering the former note of $700, additional notes paid by the bank for him, and cash advanced. This note became due on or about September 10, 1920, at which time said Schmid gave to appellant four promissory notes, aggregating $1,970, to cover all the past indebtedness, secured by a new chattel mortgage, which mortgage was not filed until March 30, 1921. On March 22, 1921, through an arrangement between the said Schmid, a creditor of his by the name of Bearth, and appellant, Schmid's dairy business was sold for $4,000. Schmid, the mortgagor, and appellant, the mortgagee, consented thereto, and both assisted in bringing about the sale, which was a very advantageous one. At that time there were no liens against the property of Schmid, except the chattel mortgages to appellant, before referred to. Out of the money received for Schmid's dairy business, appellant took $1,911.13 to pay the amount due on the notes given September 10, 1920, secured by the third chattel mortgage. This is the matter in controversy. The mortgage covered 31 cows, 12 of which had been exchanged for other cows at different times between the execution of the mortgage and the date of sale. The last mortgage was not filed for record until March 31, 1921. June 6, 1921, a petition in involuntary bankruptcy was filed against Schmid, and he was adjudicated a bankrupt on June 20, 1921. Appellee was appointed trustee of the estate August 22, 1921, and this action was brought by him as trustee to recover the $1,911.13, which the trustee claims the bank paid to itself out of the proceeds of the sale of the bankrupt's business.

As a starting point it is conceded in appellee's brief that the chattel mortgage on the 31 cows originally covered by it was valid, and no question is raised as to the validity thereof. It could not well be claimed otherwise, for in Bradley v. Robie, 266 Fed. 884, this court has held that, under the statutes and decisions of the Supreme Court of Minnesota, unrecorded chattel mortgages are void only as against creditors who have, prior to the filing thereof, acquired a lien by attachment or execution on the mortgaged property. No such situation arises here. The mortgage was given before the four-months period. Martin v. Commercial National Bank of Macon, Ga., 245 U. S. 513, 38 Sup. Ct. 176, 62 L. Ed. 441. Therefore the question of solvency on March 22, 1921, is not important. No question is raised by appellee as to the filing of this mortgage, but it is claimed that, notwithstanding the chattel mortgage was valid, appellant, by consenting to the commingling

of the mortgaged chattel property with other property and the subsequent private sale, waived its lien and stood as to the proceeds of such sale exactly the same as the unsecured creditors. This clearly presents the issue.

Certain general propositions of law claimed to be applicable here may be conceded, viz.:

[1] (a) Where a mortgagee consents to the sale by the mortgagor of the property included in the chattel mortgage, and there is a sale, the mortgage lien is waived. Jones on Chattel Mortgages (5th Ed.) § 465; Cobbey on Chattel Mortgages, § 636; New England Mortgage Sec. Co. v. Great Western Elevator Co., 6 N. D. 407, 71 N. W. 130; Drexel v. Murphy, 59 Neb. 210, 80 N. W. 813; Frick Co. v. Western Star Milling Co., 51 Kan. 370, 32 Pac. 1103; Partridge v. Minnesota & D. El. Co., 75 Minn. 496, 78 N. W. 85; Hilsmeyer v. Blake, 34 Okl. 477, 125 Pac. 1129.

[2] (b) The mortgage lien does not follow the proceeds of the sale, where mortgagee consents to sale. Maier v. Freeman et al., 112 Cal. 8, 44 Pac. 357, 53 Am. St. Rep. 151; Smith v. Clark, 100 Iowa, 605, 69 N. W. 1011; Smith v. Crawford County State Bank, 99 Iowa, 282, 61 N. W. 378, 68 N. W. 690; Carr v. Brawley, 34 Okl. 500, 125 Pac. 1131, 43 L. R. A. (N. S.) 302; Bank v. West, 46 Me. 15.

[3] (c) The purchaser takes title free from the mortgage, if sale is made with consent of mortgagee. Partridge v. Minn. & D. El. Co., 75 Minn. 496, 78 N. W. 85; Fairweather v. Nelson and Another, 76 Minn. 510, 79 N. W. 506; Klay v. Chicago, Milwaukee & St. P. Ry. Co., 126 Iowa, 671, 102 N. W. 526; Pratt v. Maynard, 116 Mass. 388; Holloway v. Arnold, 92 Mo. 293, 5 S. W. 277; Pecos Valley Bank v. Evans-Snider-Buel Co., 107 Fed. 654, 46 C. C. A. 534.

[4] While the Minnesota statutes provide as to the method of fore-closure of a chattel mortgage, the parties may provide as to how the foreclosure shall be carried out, and such method is cumulative to the statutory one. As long as their agreement is not violative of the statutes, or against public policy, or fraudulent as to the rights of third parties, they may enter into any agreement they see fit for the foreclosure or turning over of the property by the mortgagor to the mortgagee. They can stipulate for foreclosure without the statutory public notice. The statutory requirements are for the benefit of the mortgagor, and may be waived if the rights of third parties are not involved. Callen v. Rose, 47 Neb. 638, 66 N. W. 639; Jones on Chattel Mortgages (2d Ed.) 773.

[5] Irregularities in the method of sale do not make the same invalid. For instance, it has been held in some states that, where the statute provided the manner in which chattel mortgages could be fore-closed, provided for notice, also specified where the sale should be conducted, and that it should be in view of the property, the mode therein prescribed was not the only one mortgagee could pursue, and that the mortgaged chattels could be sold in accordance with the stipulations in the mortgage, though different from the mode laid down in the statutes. Lexington Bank v. Wirges, 52 Neb. 649, 72 N. W. 1049. See, also, Campbell v. Woodstock Iron Co., 83 Ala. 351, 3 South. 369;

Rose v. Page, 82 Mich. 105, 46 N. W. 227; Callen v. Rose, 47 Neb. 638, 66 N. W. 639; Stevens v. Breen, 75 Wis. 595, 44 N. W. 645; Hutchins Hanks Coal Co. v. Walnut Land & Coal Co., 141 Mo. App. 251, 124 S. W. 1098; Dempster Mill Mfg. Co. v. Wright, 1 Neb. (Unof.) 666, 95 N. W. 806, 807; Reynolds v. Thomas, 28 Kan. 810; Denny and others v. Faulkner, Adm'x, etc., 22 Kan. 89; Harris v. Lynn, 25 Kan. 281, 37 Am. Rep. 253. The mortgage in question here provided for public sale pursuant to the statute. The legal title to the property was in the mortgagee. Powell v. Gagnon, 52 Minn. 232, 53 N. W. 1148; Forepaugh v. Pryor, 30 Minn. 35, 14 N. W. 61; Stromberg v. Lindberg, 25 Minn. 513.

[6] The transaction of March 22, 1921, complained of, constituted an agreement that appellant, as mortgagee, should receive the money for the particular property covered by the mortgage, which was intended as a security for its debt, and apply it to the payment of the same. This was done. There was no fraud in the transaction. No creditor had acquired any lien. The property sold for its full value; no one was wronged. Two mortgages on the property in favor of appellant had been on record for some years. The sale was beneficial to the creditors, and more money was netted to the estate than would have been had the mortgaged property been sold separate, and it was all done under an arrangement between mortgagee and the mortgagor that the property should be so sold.

If the purchase price had not been paid, and creditors had secured a lien upon the balance, a different question would have arisen. In Fairweather v. Nelson et al., 76 Minn. 510, 511, 79 N. W. 506, 507, the court said:

"The mules having been sold with plaintiff's consent, the lien of his mortgage on them was discharged; and in such case it would only be by virtue of some agreement between the mortgagor and mortgagee that the property should be sold in the name of the latter, or that the property or money received in exchange should be the mortgagee's, or be applied on the mortgage debt, or subjected to the lien of the mortgage, as a substitute for the property sold, that the mortgagee would have any lien upon or right to it."

The facts here are sufficient to raise the inference that all parties agreed that the part of the money received from sale of the mortgaged property should go to appellant, to be applied on the mortgage debt, and thus protect appellant's lien, even after sale, under the doctrines of the Fairweather-Nelson Case. Under these circumstances, especially in view of the agreement for the private sale upon the part of mortgagor, as is fairly to be gathered from the evidence, the provisions of the mortgage for a public sale were waived, and in equity the proceedings of March 22, 1921, amounted to a foreclosure of the third chattel mortgage.

[7] Nor do we think the fact that there was confusion of property and that in the sale property was included that was not covered by the mortgage, of necessity, gives the right to claim any waiver of the mortgage lien. The confusion resulted from no wrong motives. There was an attempt upon the part of appellant and Bearth and Schmid to work out a solution of the difficulty for the best interests of all concerned. It appears that the entire business could have been sold at a better price

in the manner in which it was done than to have divided it up and sold the cows under the mortgage, and the balance of the property separate therefrom. Further, there was no difficulty in distinguishing the property intermingled, and separating it. All the parties were innocent of intentional wrong, and under these circumstances the doctrine of confusion of mortgaged property is not applicable. Equity affords a remedy for such confusion, resulting from no intentional wrong. Belcher v. Cassidy Bros. Live Stock Commission Co., 26 Tex. Civ. App. 60, 62 S. W. 924, 926; Hollenbeck v. Louden, 35 S. D. 320, 152 N. W. 116. Nor do we think the trustee could claim any priority to the mortgage of March 30, 1921, to appellant. Border National Bank v. Coupland, 240 Fed. 355, 153 C. C. A. 281.

[8] Regardless of the irregularities in the foreclosure, the circumstances of the sale of March 22, 1921, satisfy us that the portion of the fund derived from the sale of the property included in appellant's mortgage should be impressed in equity with a lien to secure the indebtedness to it. The property in the mortgage and the fund arising from its sale by agreement was a security that could be identified and should be set aside for the debt of appellant. The intention was clear to charge the particular property with a lien as security for the debt and by agreement the fund derived from the sale with a like lien. A verbal agreement is sufficient to create an equitable lien. The following authorities are in point: Goodnough Mercantile & Stock Co. v. Galloway (D. C.) 156 Fed. 504, 510; In re Farmers' Supply Co. (D. C.) 170 Fed. 502, 503; Atchison, T. & S. F. Ry. Co. v. Hurley, 153 Fed. 503, 82 C. C. A. 453; In re National Cash Register Co., 174 Fed. 579, 98 C. C. A. 425; Sieg v. Greene, 225 Fed. 955, 141 C. C. A. 79, Ann. Cas. 1917C, 1006; 3 Pomeroy's Equity, § 1235; Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. 92, 53 L. Ed. 208; Walker v. Brown, 165 U. S. 654, 664, 17 Sup. Ct. 453, 41 L. Ed. 865; In re Interborough Consol. Corporation (C. C. A.) 288 Fed. 334.

[9] The testimony shows fairly, we think, that, of the 31 cows included in the mortgage, the mortgagor had disposed of 12 of them between the time of the giving of the mortgage and the foreclosure March 22, 1921. As to these cows, they having been disposed of with the consent of the mortgagee, the lien thereon was lost. Inasmuch as some of the creditors complaining had furnished to the bankrupt the identical cows which took the place of those disposed of, it would not be equitable to hold that the mortgage lien covered these cows, or in equity followed the proceeds therefrom.

There is some dispute in the evidence as to the value of the cows. The bankrupt testified that the cows and the route (by which he evidently meant the good will of the business) was figured in at $90 a head. At another place in his testimony he states that the cows on the 22d of March were worth only $50 a head. But, as he figures the good will of the business as worth only $300, and itemizes the value of the other property sold, it is quite apparent that the cows brought more than $50 per head.

Mr. Conner, one of the officers of appellant, testifies that the 31 cows were worth $2,500. That would be a value of practically $80

per head, or, for the 19 cows, $1,520. This amount, we are satisfied, in equity, good conscience, and fair dealing, appellant was entitled to retain from the proceeds of the sale, and that, instead of a judgment in the amount of $1,911.13, there should be subtracted therefrom the sum of $1,520, representing the value of the 19 cows, leaving a balance of $391.13, for which appellee was entitled to judgment. The judgment of the trial court is therefore reversed and modified, and said court is directed to enter judgment against appellant for the sum of $391.13, with interest thereon at the rate of 6 per cent. from the 22d day of March, 1921, together with costs. The costs in this court are taxed to appellee.

STONE, Circuit Judge, concurs in the result.