SIMON D. MIHAN, APPELLEE, V. GREAT WESTERN SUGAR COMPANY: ALBERT ROTHWEILER, APPELLANT: FIRST NATIONAL BANK OF LYMAN ET AL., APPELLEES.

FILED APRIL 17, 1931. No. 27692.

*Wright & Wright,* for appellant.

*Morrow & Morrow* and *Robert W. Patterson, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DAY, J.

This action was brought by one Mihan against the Great Western Sugar Company to collect the sum of $1,-814.04 for beets grown upon plaintiff's land. The company filed an interpleader acknowledging that it owed the said sum for beets grown upon the premises, but that certain parties claimed an interest in said fund. The money was paid to the clerk of the district court to be held subject to further orders of the court. Although all parties claiming an interest in the fund filed petitions of inter-

vention, we mention only those involved in this appeal. The intervener Rothweiler claimed that there was due him $978.76 by virtue of hand labor performed in the growing and harvesting of said crop. He claims a lien by reason of an express promise to pay by the plaintiff and the mortgagee, the First National Bank of Morrill. The First National Bank of Morrill claimed an interest in the beets by reason of a chattel mortgage executed by the landlord Mihan.

The court found that the entire sum was due to Mihan, but that it should be paid to the First National Bank of Morrill by reason of its chattel mortgage. It also found that Rothweiler and other interveners had no interest whatsoever in the money, and especially found that Rothweiler had no equitable lien. Only Rothweiler has appealed from that finding. The beets involved in this controversy represent the landlord's share, the tenant's portion having been previously harvested. Rothweiler refused to harvest them because he felt uncertain that he would be paid. It was to the interest of the landlord Mihan and of the First National Bank of Morrill, who held a chattel mortgage securing the debt of Mihan, that these beets be harvested and marketed. Under these circumstances the cashier of the Morrill bank, Mihan and the representatives of the sugar company had a conference to consider the harvesting of the beets. Mr. Andrews, a representative of the sugar company, testified the cashier of the Morrill bank, Mr. Karpf, stated that "he was not interested in what had taken place prior to this time, but that he would agree to guarantee the payment of the labor for the harvesting of the balance of crop," and that Mr. Mihan stated that, "if they get all of my beets out, I will see that the labor is paid." The representatives of the sugar company thereupon informed Rothweiler of the agreement made by the cashier of said bank. Relying upon this promise, Rothweiler harvested said beets. It is upon this state of facts that Rothweiler predicates an equitable lien upon the sum due from the Great Western Sugar Company for the beets. The contract price for the labor performed after this agreement is $452.65.

In 1 Jones, Liens (3d ed.) sec. 50, it is said: "To constitute an equitable lien on a fund, there must be some distinct appropriation of the fund by the debtor, such as an assignment or order that the creditor should be paid out of it." And section 52 of the same work states: "The promise of a debtor to pay a debt out of a particular fund is not sufficient. There must be an appropriation of the fund *pro tanto,* either by giving an order on the specific fund, or by transferring the amount otherwise in such a manner that the holder of the fund is authorized to pay the amount directly to the creditor without the further intervention of the debtor."

In 37 C. J. 318, is the following: "A mere promise to pay a debt out of a particular fund, without any appropriation of the fund, does not operate as an equitable assignment of the whole or any part of such fund, and is not sufficient to create an equitable lien on the fund, even though the fund was created through the efforts and outlays of the party claiming the lien."

Although an equitable lien may be established by a parol agreement, the intention to charge particular property or a fund derived from the sale of said property with a lien as security for a debt must clearly appear. *Jackman v. Newbold,* 28 Fed. (2d) 107, citing *Great Northern State Bank v. Ryan,* 292 Fed. 10, and *Christmas v. Russell,* 14 Wall. (U. S.) 69. The intervener cites *Phillips v. Hogue,* 63 Neb. 192, to support his contention that an equitable lien was created here. In that case it was held: "A mere naked promise to pay an existing debt out of a particular fund, unaccompanied by any words of transfer, or the giving of any power or authority over the fund, does not operate either to create a lien thereon or to work an equitable assignment thereof." In the instant case there was no agreement to assign or transfer a particular fund to the payment of the intervener's claim. The undisputed testimony is that the cashier of the bank agreed to "guarantee the payment of the labor for the harvesting of the balance of the crop" and to "see that the labor is paid." In order to establish an equitable lien by agreement, it

must clearly appear that it was the intention to charge the particular fund with a lien. It must also be established that there was a distinct appropriation of the fund *pro tanto* by the one entitled to it, either by giving an order on the specific fund, or by transferring it otherwise, so that the holder of the fund is authorized to pay it directly to the assignee without any further intervention.

There is no express contract in this case creating an equitable lien in favor of intervener. In 37 C. J. 319, it is said: "In absence of an express contract, an equitable lien * * * may arise by implication. * * * Such a lien will not be implied or enforced where the facts and circumstances present no grounds for equitable relief, and there is an adequate remedy at law, as where the parties themselves have stipulated for a purely legal liability." In this case the bank and Rothweiler have contracted for a legal liability. The evidence clearly established an original undertaking upon the part of the bank to employ the intervener to harvest these beets. It was interested in getting the beets out. The facts are that the beets in this controversy represented the landlord's share; that the landlord refused to harvest them; that the bank was entitled to them by reason of a chattel mortgage, and that Rothweiler refused to furnish the labor necessary to harvest them until the bank made an agreement for payment. This was the situation at the time the cashier of the bank made an agreement which, although intended to be somewhat equivocal, induced the intervener to furnish the labor necessary. These circumstances suggest that the bank, as a matter of justice, right and legal obligation, should have paid for this labor. However, the bank was not influenced by any such just consideration, which accounts for this controversy.

Reluctantly we find that the facts and circumstances of this case are not such as present grounds for equitable relief and that the intervener Rothweiler has no equitable lien. However, we do not find in this case that the intervener Rothweiler is not entitled to recover from the

bank in a proper proceeding. Since the finding of this court is the same as that of the trial court, the judgment is

AFFIRMED.